IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LATESHA L. ROBINSON,           )
    Plaintiff,                 )
                         )
v.                              )     CIVIL ACTION NO. 14-00375-N
                         )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social Security, )
    Defendant.                 )

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Latesha Robinson ("Robinson") has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her protective applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.  By the consent of the parties (*see* Doc. 16), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (*See* Doc. 18).

Upon consideration of the parties' briefs (Docs. 12, 13) and the administrative record (Doc. 11) (hereinafter cited as "(R. [page number(s)])"),[1] the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument.  (Docs. 15, 17).

# I.   **Procedural Background**

On March 11, 2011, Robinson protectively filed applications for DIB and SSI with the Social Security Administration ("SSA"),[2] alleging disability beginning April 28, 2010.[3]  After her applications were initially denied, Robinson requested a hearing on her applications, which was held in Mobile, Alabama, before an Administrative Law Judge ("ALJ") on January 15, 2013.  (R. 22).

On March 14, 2013, the ALJ issued an unfavorable decision on Robinson's applications, finding her "not disabled" under the Social Security Act.  (*See* R. 19-29).  Robinson requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review (R. 17), which denied Robinson's request on July 2, 2014.  (R. 8-12).

On August 11, 2014, Robinson filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision.  (Doc. 1).  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law

---

[2] "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a). The Social Security Act's Supplemental Security Income ('SSI') is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)." *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

[3] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.").[4]

## II.   Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is  ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' "  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew,

---

[4] The record reflects that Robinson resides in this judicial district.  Thus, venue is proper in this Court.  *See* 42 U.S.C. § 405(g) ("Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business…").

reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).  "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid. Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted).  In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per

curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for…SSI requires that the claimant be disabled. 42 U.S.C. §…1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §…1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished).[5]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014). *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a plaintiff proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*,

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

764 F.2d 834, 836 (11th Cir. 1985).   Finally, but importantly, although "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

"When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   Claim on Judicial Review

The ALJ "reversibly erred in failing to articulate specific reasons for rejecting the opinion of Plaintiff treating physician." (Doc. 12 at 1).

### IV.   Analysis

At Step One, the ALJ determined that Robinson had "not engaged in substantial gainful activity since April 28, 2010, the alleged onset date." (R. 24).  At Step Two, the ALJ determined that Robinson had the following severe impairment: calcaneal fracture with ORIF ("open reduction, internal fixation") of the right foot, stemming from an automobile accident on April 28, 2010.  (R. 24-25).  At Step Three, the ALJ found that Robinson did not have an impairment or combination of impairments that meets or equals the severity of the specified impairments in the Listing of Impairments.  (R. 25).  Robinson does not challenge any of the ALJ's

determinations at Steps One through Three, or at Step Five.  Her claim of error

concerns the ALJ's analysis in Step Four.

> At Step Four,
>
> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Robinson had the RFC "to perform light work as

defined in 20 CFR 404.1567(b) and 416.967(b)."[7]  (R. 25-28).

_____

[7] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations…Each classification…has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4.  "Light work is defined as work that 'involves lifting no more than 20

Robinson's sole claim on judicial review is that, in determining her RFC, the ALJ erred by failing to articulate specific reasons for rejecting the medical opinions of Robinson's treating physician, Dr. Mark Perry, M.D. " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "[T]he ALJ must state with particularity the weight given to different medical

---

pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.'…The regulations further state that '[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.' " *Id.* n.5 (quoting 20 C.F.R. § 404.1567(b), which is identical to § 416.967(b)).

opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)).  However, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240.  *Accord, e.g.*, *Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished).

    "A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502).  "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'  With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).  *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.  Further, the Secretary may reject the opinion of any physician when the evidence

supports a contrary conclusion." (citation omitted)).

The ALJ summarized Dr. Perry's medical findings and opinions as follows:

In a report dated June 9, 2011, Mark Perry, M.D., a treating physician, noted it had been approximately one year since the claimant's operative treatment. He also referenced that the claimant had been denied for disability twice. Dr. Perry referenced the claimant's report that she still had significant pain when walking or ambulating. The physical examination findings revealed tenderness to palpation of the peroneal tendons, and pain with motion of the subtalar joint. However, x-rays showed good consolidation of the fracture but with decreased posterior heel height. Dr. Perry opined that the claimant was a good candidate for some form of disability (Exhibit 8F). The following year, on May 15, 2012, the claimant presented for follow-up of what Dr. Perry referenced as a "yearly surveillance." Examination findings revealed the right ankle was approximately three-fourths normal. X-rays showed nice consolidation of the fracture, although it was noted the claimant had lost some calcaneal height as well as subsequent dorsiflexion of her talus. Dr. Perry recommended a shoe heel lift to compensate for lost height. He opined that, given the claimant's injury, she would be a good candidate for disability (Exhibit 12F).

On June 12, 2012, Dr. Perry completed a Physical Capacities Evaluation, in which he estimated the claimant was able to sit for a total of 8 hours in an 8-hour workday, and could stand/walk for a total of one hour each in an 8-hour workday. He added the claimant was able to lift and/or carry up to five pounds for one hour. She was unable to use her right leg or foot for repetitive actions. The claimant could reach for two hours, and bend for one hour in an 8-hour workday, but could not squat, crawl, or climb. She was precluded from activities that involved unprotected heights and had moderate restrictions in terms of driving automotive equipment. Dr. Perry opined that the claimant had been impaired for two years, and was unable to work for 8 hours per day, 40 hours per week on a sustained basis within the limitations noted without missing more than two days of work per month (Exhibit 10F). Dr. Perry also completed a Clinical Assessment of Pain form, indicating he had treated the claimant since April 28, 2010 for a right calcaneal fracture. He indicated that pain would distract the claimant from adequately performing daily activities or work. He also indicated that physical activity would greatly increase the claimant's pain and cause distraction from task or total abandonment of task. It was noted that the impact from pain would

cause limitations, but not to such degree as to cause serious problems at work.  Dr. Perry indicated the claimant needed a heel lift for her shoe, and noted that her pain had been at the level indicated for one year.  He reiterated that the claimant had been impaired for two years, and was unable to work for 8 hours per day, 40 hours per week on a sustained basis within the limitations noted without missing more than two days of work per month (Exhibit 11F).

...

Of note, Dr. Perry, the claimant's treating physician, has provided several medical source statements, including a physical capacity assessment regarding the claimant's pain, in which he noted she has tried several times for disability based on her right foot condition (Exhibits 10F-12F).  Interestingly, after a follow-up examination on July 11, 2011, and following a brief, 15-minute evaluation a year later, on May 15, 2012, Dr. Perry determined that the claimant would be a good candidate for disability (Exhibits 8F, 12F)...

(R. 36-37).

Robinson asserts that "[t]he ALJ rejected Dr. Perry's opinion without fully articulating why.   Further, she does not explain exactly how much weight is given to Dr. Perry's opinions."  (Doc. 12 at 3).  Robinson's assertions are without merit.  The ALJ expressly assigned "very little weight" to Dr. Perry's opinions, explaining: "[T]he opinion evidence from Dr. Perry, particularly with regard to the Physical Capacity Assessment (Exhibit 10F) and the Clinical Assessment of Pain (Exhibit 11F), are internally inconsistent, as the treating physician does not state what objective findings he relied upon; and his treatment records do not support his assessments."  (R. 27-28).  The ALJ further noted that his determined RFC was supported by "the claimant's conservative treatment history and reports of her activities of daily living."  (R. 28).  The ALJ found more credible the objective medical evidence of examining physician Dr. William Crotwell, III, M.D., and

assigned his opinions "great weight." (R. 27-28).

The ALJ articulated "good cause" for assigning less than controlling weight to Dr. Perry's opinions, finding that they were not bolstered by the evidence (e.g. Robinson's "conservative treatment history[8] and reports of her daily living"9), that evidence supported a contrary finding, and that they were inconsistent with Dr. Perry's own medical records. *See Winschel*, 631 F.3d at 1179.10  Robinson, in her

---

8 *Cf. Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 290 (11th Cir. Nov. 18, 2009) (per curiam) (unpublished) ("[G]ood cause existed to reject the opinion because Dr. Leber's conclusion was inconsistent with Petteway's medical records, which showed infrequent medical visits at intervals of two or more months."); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. June 24, 2014) (per curiam) (unpublished) ("Dr. Davina–Brown's physical examinations of Harrison were consistently unremarkable, and she never found that Harrison suffered from any of the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia, such as joint swelling, synovitis, or tender trigger points. For example, Dr. Davina–Brown prescribed medications for Harrison's chronic pain but never recommended more aggressive treatment, such as visits to the emergency room for pain or trigger point injections. The conservative and routine nature of Dr. Davina–Brown's treatment plan suggests that Harrison's impairments—while significant—were not so severe that Harrison could not perform any job duties.").

9 An "ALJ is not required to give a treating physician's opinion considerable weight if the claimant's own testimony regarding her daily activities contradicts that opinion. *See Phillips,* 357 F.3d at 1241 (finding that an ALJ's decision to give a treating physician's opinion little weight was supported by substantial evidence because the claimant's admissions concerning her activities were at odds with the treating physician's assessment)."  *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 F. App'x 944, 949 (11th Cir. May 6, 2010) (per curiam) (unpublished). *See also Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 806-07 (11th Cir. July 7, 2014) (per curiam) (unpublished) ("[E]vidence of Crow's daily activities also provided good cause to discount his treating physician's opinion. *Phillips*, 357 F.3d at 1241.").

10 The ALJ was also not required to accept Dr. Perry's opinions that Robinson was "a good candidate for disability" because "the resolution of that issue is reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). 'A statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the claimant is] disabled.' *Id.* §§

brief substantive discussion regarding the ALJ's rejection of Dr. Perry's opinions (Doc. 12 at 2-3), has not attempted to demonstrate why the ALJ's decision to reject those opinions is not supported by substantial evidence, instead asking the Court to simply accept her bare assertion that the ALJ articulated no reasons for doing so.[11] Accordingly, the Court **OVERRULES** Robinson's lone assignment of error and finds that the Commissioner's decision is due to be **AFFIRMED**.

---

404.1527(d)(1), 416.927(d)(1)." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 894 (11th Cir. Jan. 16, 2013) (per curiam) (unpublished).

[11]    Robinson notes that Dr. Perry "also completed a disabled parking permit application for the Plaintiff." (Doc. 12 at 3). The placement of this observation (between the statements "On behalf of the Plaintiff, Dr. Perry completed a clinical assessment of pain and a physical capacities evaluation" and "The ALJ rejected Dr. Perry's opinion without fully articulating why" (Doc. 12 at 3)) appears to suggest that Robinson considers the parking permit application to be additional opinion evidence that the ALJ was required to consider. This suggestion is misleading.

Robinson does not cite where the form may be found in the record, and the Commissioner does not address it in her brief. It appears the parking permit application (R. 16) in question was not submitted to the ALJ for consideration. Rather, the parking permit application appears to have been completed <u>after</u> the AJL issued his opinion denying Robinson's applications and was presented as additional evidence to the Appeals Council on review. Unlike an ALJ's decision, "[t]he Appeals Council … [i]s not required to provide a detailed rationale for denying review." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784-85 (11th Cir. 2014).

By arguing only that the ALJ did not properly consider the parking permit application, Robinson has forfeited any claim of error that the Appeals Council failed to review the new evidence. *But cf. id.* at 784 ("In *Ingram*, the claimant argued the Appeals Council failed to consider her new evidence of mental disability. [496 F.3d] at 1262. We held the record contradicted the claimant's argument, explaining that the Appeals Council accepted the new evidence but denied review because, even in light of the new evidence, there was no error in the ALJ's decision. *Id.* We are confronted with the same situation in this case. Mitchell contends the Appeals Council failed to evaluate his new evidence, but the record demonstrates otherwise. As in Ingram, the Appeals Council accepted Mitchell's new evidence but denied review because the additional evidence failed to establish error in the ALJ's decision. *See id.* On this record, we are confident the Appeals Council adequately evaluated Mitchell's new evidence.").

## V.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued July 2, 2014, denying Robinson's applications for DIB and SSI benefits is **AFFIRMED** under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 24th day of July 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**